30 F.3d 273
 93 Ed. Law Rep. 85
 Bernard F. FINNEGAN, Jr., Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF the ENLARGED CITY SCHOOL DISTRICT OF
TROY, Mario Scalzi, Superintendent of the Board of Education
of the Enlarged City School District of Troy and Clem Zotto,
Athletic Director and Director of Physical Education,
Defendants-Appellees.
 No. 1838, Docket 93-9355.
 United States Court of Appeals,
Second Circuit.
 Argued June 27, 1994.
Decided July 6, 1994.
 
 Jack J. Sissman, Albany, NY, for plaintiff-appellant.
 E. Michael Ruberti, Albany, NY (Ruberti, Girvin & Ferlazzo, on the brief), for defendants-appellees.
 Before: MESKILL, KEARSE, and ALTIMARI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff Bernard F. Finnegan appeals from a judgment of the United States District Court for the Northern District of New York, Ralph W. Smith, Jr., Magistrate Judge, dismissing his action brought under 42 U.S.C. Sec. 1983 (1988) against defendants Board of Education of the Enlarged City School District of Troy (the "Board") et al. for allegedly violating his rights by (a) denying him tenure as a penalty for his exercise of his constitutional right to marry, (b) disseminating an October 15, 1991 letter from defendant Mario Scalzi ("October 1991 letter") that injured Finnegan's professional reputation, and (c) denying Finnegan a name-clearing hearing. The district court granted summary judgment dismissing the complaint on the ground that Finnegan failed to adduce admissible evidence that defendants had acted with the alleged motivation, had disseminated the October 1991 letter, or had denied him a hearing. On appeal, Finnegan contends that there existed genuine issues of fact to be tried. We disagree and affirm the judgment of the district court.
 
 
 2
 In 1988, the Board hired Finnegan as a physical education teacher in the Troy City School District for a three-year probationary term. For the 1989-1990 school term, Finnegan served as coach of the Troy City High School girls varsity basketball team. One of the members of that team was Robin Hamel, who graduated from the high school in June 1990. In August 1990, Finnegan and Hamel were married.
 
 
 3
 After an investigation into Finnegan's pre-June 1990 relationships with Hamel and the other members of the girls basketball team, the Board terminated Finnegan's position as coach of the girls team, declined to appoint him as coach of the boys team, and, at the end of his probationary period, denied him tenure. The October 1991 letter was sent in response to Finnegan's request for a statement of reasons for the Board's actions.
 
 
 4
 Principally asserting the claims described above, Finnegan commenced the present action, which by consent of the parties was referred to the magistrate judge for decision, see 28 U.S.C. Sec. 636(c) (1988); Fed.R.Civ.P. 73. In a Memorandum-Decision and Order dated November 18, 1993 ("Decision"), the magistrate judge concluded that there were no genuine issues of fact to be tried. We agree, substantially for the reasons stated in that Decision.
 
 
 5
 A public employee who claims that he was denied continued employment and tenure for unconstitutional reasons bears the burden of showing, inter alia, that his constitutionally protected conduct was a substantial motivating factor in the defendant employer's decision. See, e.g., Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 285-87, 97 S.Ct. 568, 575-76, 50 L.Ed.2d 471 (1977). Finnegan presented only conclusory allegations and his own opinion that the real reason for the Board's employment decisions was his marriage to Hamel. He adduced no evidence to support that contention, and he conceded that defendants' inquiries focused solely on the period prior to Hamel's graduation. The magistrate judge correctly concluded that Finnegan had not adduced sufficient evidence to warrant a trial of the claim that defendants sought to penalize him because of the marriage.
 
 
 6
 We also reject Finnegan's contention that he adduced sufficient evidence to require a trial as to whether defendants publicly disseminated the October 1991 letter. His only proffer was his affidavit to the effect that Hamel had stated that a reporter told her Scalzi had shown a copy of the letter to the reporter. This double hearsay would not have been admissible at a trial and hence was insufficient to create a genuine issue to be tried. We note that Finnegan has conceded that he disclosed the letter to federal and state agencies and had no information that anyone else had done so; that Hamel showed the letter to print and television reporters; and that Finnegan caused parts of the letter to be displayed on a television program on which he appeared. These disseminations by Finnegan and his wife cannot be attributed to defendants.
 
 
 7
 Nor was there any genuine issue to be tried as to whether defendants denied Finnegan a name-clearing hearing. Finnegan did not dispute that in response to his November 18, 1991 letter requesting such a hearing, Scalzi sent him a November 22, 1991 letter asking for clarification and stating, "I will, subsequent to receiving your response, make my recommendation to the Board of Education regarding your demand for a name-clearing hearing." Finnegan did not respond to Scalzi's letter and hence no rational juror could find that defendants denied him such a hearing.
 
 CONCLUSION
 
 8
 We have considered all of Finnegan's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.